**John MILLANE, Plaintiff,**

v.

**BECTON DICKINSON & COMPANY, Defendant.**

**No. 3:97CV00083(WWE).**

United States District Court,
D. Connecticut.

Sept. 23, 1999.

---

James S. Brewer, William Francis O'Shea, West Hartford, CT, for Plaintiff.

Daniel Schwartz, Day, Berry & Howard, Stamford, CT, for Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiff, John Millane, brings this four count complaint against defendant, Bectin

Dickinson & Company ("Bectin Dickinson").[1] Plaintiff alleges that his termination by defendant was in violation of the Americans with Disabilities Act, 42 U.S.C., Section 1201 *et seq.* ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. Section 621 *et seq.* ("ADEA"), the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1001 *et seq.* ("ERISA") and inflicted emotional distress upon him.

Defendant now moves for summary judgment as to the entire amended complaint.

## STATEMENT OF FACTS

The facts are distilled from the parties' moving papers and exhibits thereto and their Local Rule 9(c) statements.[2]

Plaintiff began working for defendant as a sales representative in February, 1969. He received regular salary increases and several promotions during his employment until he was laid off in October, 1995. It is defendant's position that the only reason Millane was laid off, along with a twenty-eight (28) year man from Millane's department, was as part of a reorganization and reduction in force.

At the time of his layoff, plaintiff was a senior sales representative in the BD Division of defendant, selling various medical devices manufactured by defendant. In the past, a Bectin salesperson, such as plaintiff, could do well by fostering relationships with nurses at hospitals and doctors' offices since these nurses were often the decision makers as to what product to buy and from whom. As the health care industry evolved, defendant realized that its sales presentation would have to be concomitantly altered. No longer was it the nurses, concerned with quality and health care, who made purchasing decisions; rather, it was purchasing agents concerned with cost and business practice. They were more economically driven and not concerned solely with clinical advantages.

Defendant determined that its new sales approach would be more business oriented and began to take steps to modify its sales practices to make more effective sales presentations to these different decision makers. In particular, defendant placed increasing emphasis on computer programs and presentations to customers to demonstrate cost effectiveness of defendant's products.

As this new sales approach was contemplated, the performance skills of defendant's salespeople were being reevaluated. Michael Klein, Senior Vice–President of Sales, requested that individuals who reported directly to him, group their salespeople into top, middle, and bottom performers. Mark Wilzbach, then age forty-four (44), asked Martin Hart, plaintiff's Regional Manager, to perform the requested analysis. Hart, then age fifty (50), did so and placed two people as the "bottom performers", one Frank Mazzie, age twenty-eight (28) and plaintiff, then age fifty-one (51). As a result of this rating, Hart placed both men on probation and gave them performance improvement plans. At that time, Mr. Klein anticipated a reorganization, but did not yet know the form it would take.

As the reorganization unfolded, it was determined to dismantle three sales divi-

---

1. Plaintiff received permission to file a third amended complaint, after the present summary judgment motion was filed. Inasmuch as the parties have briefed the ERISA claim, and plaintiff has briefed the intentional infliction of emotional distress claim, these two counts will also be decided herein.

2. Statements in the plaintiff's Rule 9 statement which directly contradict his deposition testimony will not be credited. The Second Circuit follows the rule that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City Dep't. of Corrections,* 84 F.3d 614, 619 (2d Cir.1996), *quoted and followed in Raskin v. Wyatt Co.,* 125 F.3d 55, 63 (2d Cir.1997).

sions, including plaintiff's, and merge them into a single sales division. Inevitably, the reorganization resulted in fewer open sales positions. Mr. Hart recommended against retaining plaintiff as an employee because of the recognized difficulties he had with organization, written communication, computers and analytical ability. Plaintiff testified on deposition that he agreed that he had difficulties in these area.

Nevertheless, Hart took plaintiff off of probation because he (1) considered plaintiff a friend; (2) felt plaintiff had made a good faith effort to comply with the performance plan; and (3) knew plaintiff would be left better off financially if he were laid off because of the reorganization than if he were terminated for cause. Hart told plaintiff that even though he was being taken off probation, it was highly unlikely that he would be retained after the reorganization took effect.

In September, 1995, plaintiff met with Hart and Camille Cafferty, Human Resources Manager, to discuss plaintiff's layoff. Millane was given twenty-six (26) weeks of severance pay and outplacement services. He was also advised that he was fully vested in his pension plan. Millane testified at his deposition that when he reminded his superiors that he had had a car accident using defendant's car, his employment was extended for two weeks in order that he could apply for a car loan and represent that he was employed by defendant.

During this interview, plaintiff asked that he be considered for early retirement by giving him the requisite 85 points and considering him to be fifty-five, the two requirements for early retirement. Defendant declined to accommodate the plaintiff since he was short by three years of having the requisite points and age.

Millane was laid off in mid-October, 1995, two weeks after the other employees, including twenty-eight (28) year old Mazzie, had been laid off during the restructuring. After the reorganization, Millane's duties were mostly absorbed by one Walter Joyce, who is four years older than Millane.

## LEGAL ANALYSIS

### I. *The Standard of Review*

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. 2548. *Accord, Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d. Cir.1995) (movant's burden satisfied by showing if it can point to an absence of evidence to support an essential element of nonmoving party's claim).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party...." *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). If the nonmoving party submits evidence which is "merely col-

orable", or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original).

## II. *The Standard As Applied*

### A. *The ADA Claim*

■ The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability in regard to ... discharge of employees." 42 U.S.C. § 12112(a). In order to make out a prima facie case of discriminatory discharge under the ADA, Millane must show that: (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essentials functions of his job with or without reasonable accommodation; and (4) he was fired because of his disability. *See Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869–70 (2d Cir.1998) (citations omitted). Defendant argues that plaintiff has failed to show that he is an individual with a disability within the meaning of the ADA, and therefore has not made out a *prima facie* case of discrimination.

■ The ADA defines disability as follows:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such impairment;

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Plaintiff claims that he meets this statutory definition and asserts that he was fired because of his disability. Plaintiff suffers from a medical condition called arterial venous malfunction of the left front lobe. Plaintiff testified that such condition "indicates that there is an artery in my left front lobe that does not pass on blood through a capillary action but does it straight on like a tube to tube, without the capillary action."

The Equal Employment Opportunity Commission ("EEOC") has promulgated administrative regulations implementing the ADA. *See* 29 C.F.R. § 1630. "We accord great deference to the EEOC's interpretation of the ADA, since it is charged with administering the statute." *Francis v. City of Meriden*, 129 F.3d 281, 283 n. 1 (2d Cir.1997) (internal quotation marks and citation omitted).

According to the EEOC, the term "substantially limits" means; "Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). "Major life activities includes functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i).

Plaintiff allegedly was born with this condition, which became symptomatic at age thirty, when he had a petit mal seizure. The defendant learned about his condition at that time—nearly twenty years prior to his layoff. Millane testified to modifications he must make in his life due to this condition as follows: 1) he cannot take aspirin; 2) he cannot drink alcohol while he is on his medications; 3) he needs a good night's sleep, and 4) he

sometimes has difficulty in remembering dates. Millane admitted in his deposition that he has no medical evidence, nor "any hard facts" to support his ADA claim.

Plaintiff has not made out a *prima facie* case under the ADA. None of his four "restrictions" amount to a "substantial" limitation of a "major life activity." The defendant knew of his "condition" for over twenty years and the only aspect it took was to restrict him from driving a company car for a de minimus amount of time following his initial seizure. Inasmuch as plaintiff has submitted no credible evidence under the substantive law of the ADA, summary judgment will be granted on this count of the amended complaint. "Mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." *Thornton v. Syracuse Savings Bank*, 961 F.2d 1042, 1046 (2d Cir.1992) (internal quotations and citations omitted).

#### B. *The ADEA Claim*

Millane also claims that his layoff violated the ADEA, as he was over fifty when his layoff occurred. He claims that a stray remark, which he personally did not hear, was that the home office did not like "seasoned representatives" working in his region. He testified that the term "seasoned representatives" meant older salespeople.

■ To make out a *prima facie* case of age discrimination, Millane must show: (1) that he was within the protected age group; (2) that he was qualified for the position; (3) that he was discharged; and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination. *Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir.1994).

■ Plaintiff fails to meet the standards for a *prima facie* case of age discrimination for two reasons. First, he was not qualified for any of the positions left after the restructuring and, second, he cannot shown that his layoff occurred under circumstances giving rise to an inference of age discrimination.

As previously noted, when asked to rank employees under his control, Martin Hart, plaintiff's regional manager, ranked him in the bottom tier of his salespeople and put him on probation. Although he was eventually removed from probation, Hart avers that it was for personal reasons on his part because he considered plaintiff a friend and wanted him to be laid off, with the concomitant benefits, and not fired for cause. The new restructuring called for persons with certain experience and abilities, which plaintiff did not have. Plaintiff also overlooks the fact that, when he was laid off, so was a twenty-eight year old colleague in the same department.

At the time of his layoff, Hart, then fifty, recommended that fifty-one year old Millane not be given a position in the reorganized sales force. Mark Wilzbach was forty-four years of age and was ultimately responsible for the decision to lay off plaintiff. Following his layoff, Millane's duties were taken over by Wayne Joyce, who was then fifty-five years old. The fact that these men were so close to plaintiff's age bars any inference of age discrimination. Further, the fact that plaintiff's duties were taken over by an older employee contradicts plaintiff's claim of discriminatory animus. *Brocklehurst v. PPG Industries, Inc.*, 123 F.3d 890, 897 (6th Cir.1997).

■ Finally, the alleged remark regarding "seasoned employees", which was not made to plaintiff, not heard by him, and not attributed to a decision maker, is not evidence of age discrimination. One may be a "seasoned employee" without even being in the protected class of a person over the age of forty. With enough longevity and experience, one may be a "seasoned employee" at any age, including an individual under the age of forty.

Plaintiff testified under oath that he could not point to any other evidence indicative of age discrimination. Without such evidence of a specific intention to discrimi-

nate, summary judgment on this claim must be granted.

## C. *The ERISA Claim*

Millane's ERISA claim also fails for two reasons: failure to exhaust administrative remedies provided by the defendant's comprehensive Retirement Plan and, second, his failure to show that the three year gap between his layoff and the allowance for early retirement was discriminatory.

 Defendant has a comprehensive retirement plan, with an extensive review and appeals process. Millane did not avail himself of any of these administrative remedies. This defect is significant because the Second Circuit requires ERISA claimants to exhaust their internal administrative remedies prior to bringing an action in federal court.

> The primary purposes of the exhaustion requirement are to: (1) uphold Congress' desire that ERISA trustees be responsible for their action, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo.

*Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, 594 (2d Cir.1993) (citation omitted). It is only when a claimant makes a "clear and positive showing" that pursuing administrative remedies would be futile that the purposes behind the requirement of exhaustion are no longer served, and a court will release a claimant from such requirement. *Id.*

 In the present case, Millane did not even notify defendant that he wished to pursue his administrative remedies. This is not the "clear and positive showing" required by the Second Circuit to avoid such a path. For this reason, plaintiff's ERISA claim must fail.

Even if the Court determined to allow Millane to proceed without exhaustion, there exists yet another reason for his claim to fail. Millane was laid off more that **three years** before qualifying for early retirement. This length of time rebuts any presumption that he was laid off in order that defendant need not pay him early retirement benefits. *See e.g., Turner v. Schering–Plough Corp.,* 901 F.2d 335 (3d Cir.1990) (no inference where employee fired more than two years before vesting). Since an employee is not guaranteed to maximize his benefits, an employer can make decisions which affect an employee's pension rights as long as the decision is not made because of those pension rights. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1111 (2d Cir.1988). No violation of ERISA occurs when the loss of pension benefits was "a mere consequence of, but not a motivating factor behind, a termination of employment." *Id.* (citation omitted).

In the present case, as previously noted, plaintiff was laid off due to corporate restructuring, having nothing to do with his early retirement benefits. The length of time—three years—until he could possibly reach those benefits is too long a duration to suggest that Millane's termination was accomplished for the reason of denying him those benefits. *See Duffy v. Drake Beam Morin, Harcourt General, Inc.,* 1998 WL 252063 at * 9 (S.D.N.Y.1998) (plaintiff terminated three years before qualifying for early retirement failed to raise inference of discrimination under ERISA).

For these reasons, summary judgment is granted on plaintiff's ERISA claims.

## CONCLUSION

Plaintiff has set forth no genuine issues of material fact upon which he would bear the burden at trial. Accordingly, defendant's motion for summary judgment [doc. # 80] is GRANTED. Inasmuch as judgment shall enter in favor of defendant on all federal claims, the Court declines to exercise supplemental jurisdiction over any state law claims, and these claims are dis-

missed without prejudice. The Clerk is directed to close this case and enter judgment for defendant.

SO ORDERED.