Thomas MANISCALCO, individually and on behalf of his dependent daughter, Alexandra Maniscalco, Plaintiffs,

v.

TAC AMERICAS COMPREHENSIVE HEALTHCARE PLAN and TAC Americas, Inc., Defendants.

No. 03 CIV.8366 CM.

United States District Court, S.D. New York.

July 15, 2004.

Mark Scherzer, Law Office of Mark Scherzer, New York, NY, for Plaintiffs.

Dean M. Schaner, Scott M. Nelson, Haynes and Boone, LLP, Houston, TX, Gabriel A. Berg, Berg & Androphy, New York, NY, for Defendants.

MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

Thomas and Alexandra Maniscalco filed this action against TAC Americas, Inc. Comprehensive Healthcare Plan (the "Plan") and TAC Americas, Inc. ("TAC") to recover medical benefits and attorneys' fees under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001–1461 (West 2003), specifically § 1132(a)(1)(B), (a)(3), and (g). TAC moves to dismiss the case for lack of jurisdiction, and, alternatively moves for summary judgment based on the Plaintiffs' failure to exhaust the Plan's mandatory and jurisdictional administrative remedies.[1] For the following reasons, the Defendant's motion to dismiss the case for lack of jurisdiction is denied.

## I. FACTS

TAC is a provider of "open systems" for buildings, such as thermostats, security systems, and other electronic systems. Thomas Maniscalo began work as a Project Manager for TAC on January 10, 2000, after TAC acquired a predecessor company. Alexandra Maniscalco is Mr. Maniscalco's daughter.

On February 10, 2000, Plaintiffs became eligible to participate in an Aetna medical insurance plan that TAC offered its full-time employees and their dependents. TAC switched from the Aetna Plan to the self-funded Plan effective July 1, 2003. Accordingly, coverage under the current Plan began on that date.

Under the Plan, ValueCHECK provides benefits utilization management, benefit preauthorization, and benefits case management services. Administrative Concepts, Inc. ("ACI"), is the Plan's Claims Administrator. The Claims Administrator is responsible for paying Plan benefits claims. TAC is the Plan's Plan Administrator.

Under the Plan, the Plan Administrator (TAC) has the discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues that relate to eligibility for benefits, to decide disputes that may arise relative to a Plan Participant's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan. (Ex. 2, at 40). The Plan also provides that the Plan Administrator's decisions will be final and binding on all parties.

The Plan enumerates specific claims procedures. The claims procedures include how to submit a claim for benefits and how to appeal an Adverse Benefit Determination.

Alexandra's medical records show that she suffers from numerous, complex medical conditions. In recognition of her serious condition, Aetna provided Alexandra with 24–hour private duty nursing ("PDN") care, overriding a limitation within the Aetna Plan that limited annual PDN visits, and stated that benefits were to continue as long as the plan was in effect and there continued to be medical necessity.

TAC's employees were advised of the change in Plan coverage and funding, from Aetna to the self-funded plan, effective

---

**1.** This motion is properly decided as a motion to dismiss, and not summary judgment, since a failure to exhaust administrative remedies is a jurisdictional prerequisite to a suit for benefits. *See, e.g., Peterson v. Continental Casualty Co.,* 282 F.3d 112, 117–18, 123 (2d Cir.2002), *Midpoint Service Provider, Inc. v. Connecticut General Life Ins. Co.,* 152 F.Supp.2d 306 (S.D.N.Y.2001); *De Pace v. Matsushita Elec. Corp. of America,* 257 F.Supp.2d 543 (E.D.N.Y.2003).

July 1, 2003, on Friday, June 20, 2003. On June 23, 2003, Mr. Maniscalco wrote to ACI, enclosing a copy of his appeal to Aetna, in order to familiarize ACI with Alexandra's medical history. He requested a determination in favor of continuing Alexandra's in-home private nursing care.

Plaintiffs contend that Mr. Maniscalco's letter on June 23, 2003, triggered an extensive review of his claim throughout the month of July. ValueCHECK assigned a case manager in response to Mr. Maniscalco's letter, on or about June 30, and Mr. Maniscalco was informed by that case manager by telephone on July 3, 2003 that 24/7 PDN care had been approved. The approval was also communicated to Mr. Maniscalco by Prime Care and Ultracare who forwarded to him copies of Case Management Service Agreements sent by ValueCheck in early July, 2003.

In addition, on July 24, Ms. Lee and ACI met to discuss Mr. Maniscalco's claim, and on July 29 Mr. Williams sent a follow-up letter to Ms. Lee which confirmed that they had met to discuss "claims processing guidelines and how they relate to your Plan provisions" and expressed hope that the discussion "will serve as closure to the ongoing issue related to the processing of Mr. Maniscalco's claims for his daughter Alexandra." (Ex. G, at 1). In addition, the letter proceeded with at detailed description of the Plan's provisions.

On July 31, 2003, Prime Care, Inc., the provider of Alexandra's PDN care, submitted Alexandra's expenses for the month of July for PDN care services to ACI for payment. When payment was made, Prime Care received payment for only four hours, not 24 hours.

On August 7, 2003, Mr. Maniscalco sent an e-mail to an ACI representative, Tim Williams, and requested a written description as to why the PDN claims from Prime Care dated July 1 through July 20 were paid for four hours per day instead of twenty-four. Mr. Williams responded by e-mail on the afternoon of the same day. (See Supp. Memo. at 5–6, 12–13; Ex. 6 at 1). In his response, Mr. Williams stated that the documents Prime Care had submitted did not contain required CPT–4 medical coding. In addition, he explained that ACI reviewed the nursing notes Prime Care had provided, in the absence of the required medical coding, and determined that many of the services rendered were custodial in nature. ACI only allowed payment for four hours per day of custodial care. The e-mail indicated that additional reimbursement may be considered pending receipt of an itemized statement complete with CPT–4 codes for each visit and the corresponding ICD.9 diagnosis for each claim. He also explained that future claims submitted by Prime Care, Inc. that did not adhere to the filing requirements would be pended, and the required information requested. Mr. Williams referred Mr. Maniscalco to the Plan's procedure for filing an appeal once a claim in whole or part is denied. ACI simultaneously posted on the internet the amounts of authorized and excluded benefits.

On August 12, 2003, Plaintiffs' counsel sent a letter to the Plan Administrator, the Claims Administrator, and ValueCHECK, in which Plaintiff's counsel requested that TAC reconsider ACI's determination as contained in the e-mail. He asked that the appeal be expedited due to the "urgent and ongoing nature of Alexandra's care" and also asked for all documentation relevant to the claim. (Ex. 7, at 1).

On September 8, 2003, Donna Lee, acting as Plan Administrator on behalf of TAC, responded to Plaintiffs' counsel's August 12 letter. In her response, Ms. Lee explained that: (i) Mr. Williams's August 7, 2003 e-mail was not an "adverse benefit determination;" (ii) Alexandra's claim was

not an "urgent care" claim, but rather a "post-service" claim; (iii) the Plan did not have to produce documents because no "adverse benefit determination" had been rendered on the claim; and (iv) the Plan had until September 15, 2003 to render a decision on Alexandra's claim.

In considering Alexandra's claim, TAC, through ValueCHECK, engaged MCMC, a provider of independent medical reviews, to perform a routine independent review of Alexandra's case. MCMC reported that it forwarded a determination to Value-CHECK, including three separate expert reviews performed by physicians anonymously identified on August 22, 2003. In addition, MCMC received a request from ValueCHECK to provide a coordinated review regarding the number of hours the parents can reasonably be expected to provide care for the patient. The coordinated review was provided on September 9, 2003, and recommended eighteen hours of skilled nursing care per day and another six hours of respite care (also skilled nursing care) per week for the benefit of the family.

TAC's Compensation and Benefits Committee (whose members included of Mr. Dean Myers, President; Mr. Pierre Gunnarsson, Chief Financial Officer; Mr. Gregory Pakes, Controller; and Ms. Donna Lee, Director of Human Resources), acting as Plan Administrator on behalf of TAC, received and considered the recommendation of the coordinated review, and accepted it as the benefits determination. Ms. Lee communicated this decision to Mr. Maniscalco by letter on September 10, 2003. In the letter, Ms. Lee described the Plan's claims review procedures and informed Mr. Maniscalco of his rights to appeal the September 10, 2003 determination. Ms. Lee also told Mr. Maniscalco that he could bring a civil action if the appeal resulted in an adverse benefit determination on review.

Plaintiffs' counsel sent letters on September 15 and 16, 2003 in which he again requested relevant claim documentation. Mr. Maniscalo, however, did not follow the procedures for appeal of the Plan Administrator's decision, as outlined in Ms. Lee's letter. The Plan Administrator provided a response to the request for relevant claim documentation on October 10, 2003.

On October 21, 2003, the Plaintiffs filed this lawsuit.

## II.  DISCUSSION

### a.  Standard of Review

■  Rule 12(b)(1) provides that a court must dismiss a lawsuit if it does not have subject matter jurisdiction over the claim. The Second Circuit has held that federal courts lack jurisdiction to hear an ERISA benefits claim if the plaintiff's have failed to exhaust all administrative remedies available under the plan. *See, e.g., Peterson v. Continental Casualty Co.*, 282 F.3d 112, 117–18, 123 (2d Cir.2002); *Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 593–94 (2d Cir.1993); *Barnett v. International Bus. Mach. Corp.*, 885 F.Supp. 581, 586–87 (1995). Failure to exhaust, however, is excused where claimants make a clear and positive showing that pursuing available administrative remedies would be futile. *Kennedy*, 989 F.2d at 594.

■  In the context of a motion to dismiss under Rule 12(b)(1), when "resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 496–97 (2d Cir.2002); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000).

*b. Motion to Dismiss Denied*

*1. Relevant Plan Provisions*

The Plan includes the following relevant provisions:

A claim for benefits should be submitted to the Claims Administrator. (i.e., ACI) (Plan Amendment, Ex. 3, at 3).

**Adverse Benefit Decision**—"a denial, reduction, or termination of, or a failure to provide or make payment (in whole or part) for a benefit..." (Plan Amendment, Ex. 3, at 1)

**Manner and Content of Notification of Benefit Determination**—the Claims Administrator shall provide a Claimant with written or electronic notification of an Adverse Benefit Determination. The notification shall set forth in a manner calculated to be understood by the Claimant:

1–the specific reason or reasons for the Adverse Benefit Determination

2–reference to the specific Plan provisions upon which the determination is based

3–a description of additional material or information necessary for the Claimant to perfect the Claim and an explanation of why such material or information is necessary

4–a description of the Plan's appeal procedures and time limits applicable to such procedures, including, in the case of a Claim Involving Urgent Care, a description of the expedited review process applicable to such Claims, along with a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse Benefit Determination on Review. (Plan Amendment, Ex. 3, at 7).

**CLAIMS REVIEW PROCEDURE— Appeal of an Adverse Benefit Determination**—In cases where a Claim for benefits is denied in whole or in part,

the Claimant may appeal the denial to the Plan Administrator. (i.e., TAC).

1–Each Claimant shall have a reasonable opportunity to appeal an Adverse Benefit Determination to the Plan Administrator as set forth hereafter.

2–Each Claimant shall have the opportunity to submit written comments, documents, records, and other information relating to the Claim appealed. (Plan Amendment, Ex. 3, at 8).

*2. Plaintiffs Exhausted the Administrative Remedies*

The Second Circuit has recognized "the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases". *Kennedy,* 989 F.2d at 594 *(quoting Alfarone v. Bernie Wolff Construction,* 788 F.2d 76, 79 (2d Cir.), *cert. denied,* 479 U.S. 915, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986)). The Second Circuit has noted that:

The primary purposes of the exhaustion requirement are to: (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo.*

*Davenport v. Harry N. Abrams, Inc.,* 249 F.3d 130, 133 (2d Cir.2001). Furthermore, the Second Circuit has explained that the requirement "was intended to 'help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the cost of claims settlement for all concerned.'" *Kennedy,* 989 F.2d at 594 (quoting *Amato v. Bernard,* 618 F.2d 559, 567 (9th Cir.1980)).

Exhaustion, in the context of ERISA, however, "requires only those administrative appeals provided for in the relevant plan or policy." *Id.*

In the present case, consistent with ERISA's requirements, the Plan requires a claimant to file a claim with ACI. If he receives an Adverse Benefit Determination from ACI, the claimant appeals the Adverse Benefit Determination to TAC, and obtains a Benefit Determination on Review. *See* 29 U.S.C. § 1133 (requiring that notice be given to any participant whose claim has been denied and affording participant's a reasonable opportunity to a "full and fair review by the appropriate named fiduciary of the decision denying the claim").

Here, Plaintiffs followed the proper procedure under the plan after receiving an adverse benefits determination, and subsequently received an Benefit Determination on Review.

It is not disputed that Plaintiffs filed a claim with ACI. Plaintiffs contend that the e-mail from ACI sent on August 7, 2003 by Mr. Williams was an Adverse Benefit Determination, while Defendants argue that the e-mail was an "informal, information response e-mail," which simply informed Mr. Maniscalco that ACI could only pay part of the claim at that time based on the incomplete information provided by Prime Care.

The e-mail says, in pertinent part:

Your processed claims are now on the WEB for your review.

Page 33 of your plan document details the requirements for consideration of claims submitted for payment. As we discussed Prime Care, Inc. did not come close to meeting these requirements. Administrative Concepts, Inc. (ACI), due to the timing concerns placed on us by your provider, did adjudicate the statement submitted by Prime Care, Inc. from nursing notes supplied by

them. Based upon the information submitted by Prime Care, Inc. (in the absence of documented medical CPT–4 medical coding) the notes indicate many of the services rendered were custodial in nature. ACI, however, did review each 24 hour period and has allowed a full 4 hour Home Health Care benefit under your plan.

As indicated on the Explanation of Benefits which will be going to your provider ACI indicated that additional charges may be considered pending receipt of an itemized Statement complete with CPT–4 codes for each visit and the corresponding ICD.9 diagnosis for each claim . . . .

Please refer you to page 34 of the Plan Document under CLAIMS REVIEW PROCEDURE. This outlines the procedure for filing an appeal once a claim in whole or in part is denied. Following review of any appeal by ACI all claims will be submitted to the Plain Administrator for final disposition.

(Ex. 3, at 1).

The Plan states that an Adverse Benefit Determination is "a denial, reduction, or termination of, or a failure to provide or make payment (in whole or part) for a benefit resulting from the application of precertification procedures or other utilization review procedures . . . ." (Ex. 3, at 1). The e-mail clearly fits this definition.

▮▮ In the e-mail, Mr. Williams states, in definitive language that the Mr. Maniscalco's "processed claims" were on the web for him to review. In addition, Mr. Williams explains that ACI "did adjudicate" and "did review" the claim, even in the absence of the CPT–4 codes and the ICD 9 diagnosis for each claim. The Plan states that, "The Claims Administrator, or its designee will determine if enough information has been submitted to enable proper consideration of the claim. If not, more

information may be requested." In the present case, however, it is clear that ACI did not take this step. Instead, the e-mail explains that, "due to timing concerns" placed on ACI by the provider, ACI "did adjudicate the statement submitted by Prime Care, Inc. from nursing notes supplied by them." (Ex. 6, at 1). It also states that ACI "remedied" the claim and "allowed" a full four Home Health Care benefit. This is the language of a benefits determination. Although Defendants state that the e-mail "pended" the existing claim and requested additional information (Ex. 6, at 1), the language in the e-mail makes it clear that a decision to deny all requested benefits had been, in fact, rendered.

Furthermore, Mr. Williams instructs Mr. Maniscalco to refer to the Claims Review Procedure that "outlines the procedure for filing an appeal once a claim in whole or in part is denied." (Ex. 6, at 1). Thus, it is clear that ACI must have understood its own decision to be an appealable Adverse Benefit Determination.

The fact that the decision came by e-mail is of no moment. The Plan explains that "the Claims Administrator shall provide a Claimant with written *or electronic* notification of an Adverse Benefit Determination." (Emphasis added).

Upon receipt of this Adverse Benefit Determination, Plaintiffs' appealed by sending a letter to TAC, ACI, and Value-CHECK from Plaintiff's counsel, in accordance with the Plan's Claims Review Procedure. The Review Procedure establishes that a claimant may "appeal the denial to the Plan Administrator . . . where a Claim for benefits is denied in whole or in part." It further provides that "Each Claimant shall have a reasonable opportunity to appeal an Adverse Benefit Determination to the Plan Administrator as set forth hereafter," and, "Each Claimant shall have the opportunity to submit written comments, documents, records, and

other information relating to the Claim appealed." (Ex. 3, at 8).

On September 10, 2003, TAC (in the form of the Company's Compensation and Benefits Committee) issued another determination on Mr. Maniscalco's claim. Although the Defendants attempt to classify the September 10 decision as an initial Adverse Benefit Decision, it is clear that it can be more rightly characterized as a Benefits Determination on Review. It was made by the Plan Administrator (who reviews Adverse Benefits Determinations), not by the Claims Administrator (who renders Adverse Benefits Determinations in the first instance). And it was made following the issuance of the Adverse Benefits Determination.

The Plan Administrator's ex post facto characterization of a determination is not dispositive. The court must determine whether a particular decision was an Adverse Benefit Determination or a Benefit Determination on Review. In doing so, I am governed by the terms of the plan and the circumstances surrounding the reaching of the determination. *See Norris v. Citibank, N.A.*, 308 F.3d 880, 884–85 (8th Cir.2002); *Crean v. New York City Dist. Counc. of Carpenters Pension Fund.*, 1996 WL 389248 (S.D.N.Y., Jul.11, 1996) (stating that the Plan Administrator's labeling of its decision as the "official" initial denial was not dispositive on the court's decision as to whether the plaintiff had exhausted his administrative remedies). If the Defendants's argument were accepted, TAC could evade judicial review simply by asserting that, in their opinion, what looks like a denial of benefits was not in fact a denial of benefits.

In the present case, the September 10 letter appears to be a Benefits Determination on Review. The Plan does not provide for further review after receipt of a Benefits Determination on Review. In

fact, the Plan characterizes such decisions as "final, binding, and conclusive on all persons and entities." (Ex. 3, at 4). Therefore, Plaintiffs have exhausted their administrative remedies.

## III. CONCLUSION

The defendant is directed to file a motion for summary judgment, based on the administrative record, no later than September 2, 2004. The parties are directed to follow the court's briefing schedule, as set forth in my Individual Rules.