Leelawati SANFILIPPO, Plaintiff,

v.

**PROVIDENT LIFE AND CASUALTY INSURANCE CO. aka Provident Companies, Inc. aka UnumProvident Corp., Defendant.**

No. 00CIV5913(LTS)(JCF).

United States District Court, S.D. New York.

Jan. 4, 2002.

William S. Neal, Esq., New York City, for Plaintiff.

Wright, Pindulic & Hamelsky, LLP, By Andrew I. Hamelsky, Esq., New York City, for Defendant.

## MEMORANDUM OPINION AND ORDER

SWAIN, District Judge.

Plaintiff Leelawati Sanfilippo ("Plaintiff") brings this action against defendant Provident Life and Casualty Insurance Company, a/k/a Provident Companies, Inc., a/k/a UnumProvident Corporation ("Defendant").[1] Plaintiff's complaint pleads this case as a breach of insurance contract action, with jurisdiction premised on diversity of citizenship pursuant to 28 U.S.C. Section 1332. Before the Court is Defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant contends that Plaintiff's state law cause of action is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. section 1001 et seq. ("ERISA"), and that any ERISA cause of action based on the facts plead in the complaint would be barred on account of Plaintiff's failure to exhaust administrative remedies. Both parties have approached this motion as one for summary judgment, asking the Court to consider matters outside the pleadings.[2] The Court, having considered the proffered additional materials, thus treats this Federal Rule of Civil Procedure Rule 12(b)(6) motion as one for summary judgment. See Fed.R.Civ.P. 12(b). The Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1332 and, to the extent ERISA issues are implicated, 29 U.S.C. section 1132 and 28 U.S.C. section 1331.

The Court has considered thoroughly all submissions and arguments related to this motion and the decision to be rendered reflects such consideration. For the following reasons, Defendant's motion for summary judgment is granted.

## BACKGROUND

The Court finds that there is no genuine dispute as to the following material facts. Plaintiff obtained long term disability coverage through her employer, Wyckoff Heights Medical Center ("Wyckoff"). (Statement of Undisputed Facts Pursuant to Local Rule 56.1, at ¶ 1. ("Def.'s Stmt")).[3] Defendant issued a group policy ("Policy") to Wyckoff Heights Medical Center. The Policy provides long term disability insurance coverage for eligible employees of Wyckoff. (Def.'s Stmt at ¶ 2; Am. Compl. at ¶ 9.) The Policy was issued pursuant to an application by Wyckoff, and reflects benefit design criteria set forth on the application. (Ex. 1 to Def.'s Reply to Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss; Provident Life and Casualty Insurance Company Voluntary Group Long Term Disability Insurance Certificate, Ex. 2 to Mem. of Law in Supp. of Def.'s Mot. to Dismiss.) Wyckoff agreed to the terms of the Policy and agreed to pay the premiums due thereunder to Defendant. (Ex. 2 to Def.'s Reply to Pl.'s Mem. of Law in

---

1. Plaintiff brought suit against Provident Life and Casualty Insurance Company, a/k/a Provident Companies, Inc., a/k/a UnumProvident Corporation. Defendant represents that, as a result of corporate mergers, UnumProvident Corp. is the only defendant that has an interest in this litigation. (Mem. of Law in Supp. of Def.'s Mot. to Dismiss at 2 n.1.) For purposes of this opinion, the named defendants will be referred to collectively as "Defendant."

2. See Mem. of Law in Supp. of Def.'s Mot. to Dismiss at 5; Mem. of Law in Opp'n to Def.'s Mot. to Dismiss this Case at 4.

3. Plaintiff did not submit any statement identifying disputed facts. Cf. S.D.N.Y. Local Civil Rule 56.1(b). The material facts set forth in Defendant's statement are therefore deemed to be admitted. Id. at Rule 56.1(c). Nor has Plaintiff challenged the authenticity of any of the documentary evidence submitted by Defendant in connection with the motion.

Opp'n to Def.'s Mot. to Dismiss.) Plaintiff was, at all relevant times, an eligible employee under the Policy. (Def.'s Stmt at ¶ 3; Am. Compl. at ¶ 10.) The Policy provides coverage in the event a covered person becomes disabled. (Def.'s Stmt at ¶ 4; Am. Compl. at ¶ 11.) The Policy document prepared for distribution to employees is labeled "Your Long Term Disability Benefit" and "Wyckoff Heights Medical Center." (Provident Life and Casualty Insurance Company Voluntary Group Long Term Disability Insurance Certificate, Ex. 2 to Mem. of Law in Supp. of Def.'s Mot. to Dismiss.) It includes claims procedures and a notice of ERISA rights, as well as language purporting to reserve to the plan sponsor the right to "terminate, suspend, withdraw, amend or modify the Plan ... at any time." (*Id.* at 22.)

On June 30, 1995, Plaintiff made a claim for disability benefits under the Policy. (Def.'s Stmt at ¶ 8.) Plaintiff was disabled from working as a registered nurse due to injuries sustained while on duty. (*Id.* at 9.) Defendant began paying benefits to Plaintiff on or about October 1995 and continued to pay such benefits through approximately June 1998. (Def.'s Stmt at ¶¶ 10,18; Am. Compl. at ¶ 22.) The October 2, 1995 letter notifying Plaintiff of the approval of her benefit claim included the statement: "Your Long Term Disability claim will receive payment consideration ... as required by the group plan." (Ex. 4 to Mem. of Law in Supp. of Def.'s Mot. to Dismiss.)

Defendant's June 15, 1998 letter notifying Plaintiff of the discontinuation of her benefits detailed the reasons for Defendant's termination of the benefits, explained the disability definitions in the Policy, pointed out the availability of jobs Plaintiff could perform in her geographic area, and included in its first paragraph a reference to "the Long Term Disability Plan at Wyckoff Medical Center." The letter concluded as follows:

**IF YOU DISAGREE WITH OUR DETERMINATION, YOU MAY SUBMIT A WRITTEN REQUEST FOR RECONSIDERATION, ACCOMPANIED BY DOCUMENTS OR RECORDS FROM YOUR PHYSICIAN IN SUPPORT OF YOUR APPEAL. ALL OF THE INFORMATION YOU WISH TO USE FOR YOUR APPEAL MUST BE RECEIVED IN OUR OFFICE WITHIN 60 DAYS AFTER THE DATE OR RECEIPT OF THIS LETTER. ANY INFORMATION RECEIVED AFTER 60 DAYS WILL NOT BE CONSIDERED.**

This is an Employee Retirement Income Security Act of 1974 (ERISA) qualified plan under which you have certain rights including the right to appeal. If you have a group Long Term Disability Insurance Plan Booklet, this law is explained therein.

(Letter dated June 15, 1998 from David Hooks to Plaintiff, Ex. 7 to Mem. of Law in Supp. of Def.'s Mot. to Dismiss.) (Bold and capitalization in original.) The appeal language is consistent with the corresponding language in the claims procedure section of the Policy document, which provides that if a claim is denied, and the covered person does not agree with determination, any "appeal must be made within sixty (60) days of the date of receipt of the letter denying the claim." (Provident Life and Casualty Insurance Company Voluntary Group Long Term Disability Insurance Certificate at 21, Ex. 2 to Mem. of Law in Supp. of Def.'s Mot. to Dismiss.) The Policy also provides that "[n]o action at law or in equity may be brought until 60 days after" a claimant gives proof of loss and has exhausted all appeals. (*Id.* at 22.) Plaintiff did not pursue an appeal or sub-

mit further documents within the 60–day period.

On February 17, 2000, Plaintiff's attorney wrote to Defendant, requesting that Plaintiff's claim be reopened. (Def.'s Stmt ¶ 23.) Defendant has not disputed Plaintiff's assertion in her affidavit:

> That I applied for continued benefits from Provident but was unable to pursue it further due to all that is necessary to appeal a claim; after I had an attorney on the case it was possible for him to try for me to get the benefits; that I have not been my usual self as a result of injuries and things I would have done before or even tried to do I am no longer able to do.

(Aff. in Opp'n to Def.'s Mot. For Dismissal Or Summ. J. at ¶ 11.)

### DISCUSSION

Defendant asserts that Plaintiff's breach of contract claim under the long term disability insurance policy is preempted by ERISA because the coverage under the Policy was provided pursuant to an ERISA-governed employee benefit plan. Defendant argues that Plaintiff's amended complaint does not articulate a claim under ERISA and, therefore, must be dismissed because it fails to state a cause of action. Defendant further contends that, even if Plaintiff's amended complaint did assert a cause of action under ERISA, the ERISA claim would nevertheless be subject to dismissal because Plaintiff failed to exhaust the administrative remedies available under the employee benefit plan. Plaintiff argues that she has a valid state law cause of action and that, if the Court determines that her state law claim is preempted by ERISA, she should be permitted to amend further her complaint to assert an ERISA claim.

*Defendant's Summary Judgment Motion*

Summary judgment shall be granted in favor of a moving party where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing the absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party then must meet a burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp., v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990), *quoting* Fed. R.Civ.P. 56(e); *National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 (2d Cir. 1989). A court faced with a summary judgment motion does not make credibility determinations or weigh the evidence; all inferences must be construed in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Carlton v. Mystic Transportation Inc.*, 202 F.3d 129, 133 (2d Cir.2000). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is inappropriate. *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). "Conclusory allegations, conjecture and speculation" will not, however, create a genuine issue of

fact. *Kerzer v. Kingly Manufacturing,* 156 F.3d 396, 400 (2d Cir.1998).

Defendant contends that summary judgment is appropriate because the subject Policy coverage is an employee welfare benefit plan subject to ERISA's preemption provisions. ERISA's definition of "employee welfare benefit plan" reads in pertinent part as follows:

> any plan, fund, or program which was heretofore or is hereafter established° or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds or prepaid legal services . . . .

29 U.S.C.A. § 1002(1) (West 1999). Plaintiff's claim is asserted under the Policy. (*See* Am. Compl. ¶¶ 9–14.) " '[A] "plan, fund or program" under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.' " *Grimo v. Blue Cross/Blue Shield of Vermont,* 34 F.3d 148, 151 (2d Cir.1994) (citation omitted). *See also Searles v. First Fortis Life Insurance Company,* 98 F.Supp.2d 456, 459 (S.D.N.Y.2000); *Conners v. Connecticut General Life Insurance Company,* No. 98 Civ. 8522(JSM), 1999 WL 1211831, at *1 (S.D.N.Y. Dec.16, 1999).

The Policy document makes it clear that the insured arrangement is a disability benefit program covering employees of Wyckoff, Plaintiff's employer; the Policy document incorporates standard ERISA procedural language. (*See* Provident Life and Casualty Insurance Company Voluntary Group Long Term Disability Insurance Certificate at 3, 20–23, Ex. 2 to Mem. of Law in Supp. of Def.'s Mot. to Dismiss). It details the intended benefits, specifies the classes of Wyckoff employees eligible for coverage, indicates that the plan is financed through participant contributions, and includes detailed procedures for claiming benefits. *Id.* at 3–6, 21. Wyckoff is identified as the sponsoring employer. *Id.* at 3, 21–22; *see also* 29 U.S.C.A. § 1002(16)(b) (West 1999) (employer is "plan sponsor" for ERISA purposes). The Policy's cover page identifies the program as one for Wyckoff Heights Medical Center, and identifies Wyckoff as the policyholder. (Provident Life and Casualty Insurance Company Voluntary Group Long Term Disability Insurance Certificate at cover page, 1, Ex. 2 to Mem. of Law in Supp. of Def.'s Mot. to Dismiss.)

Where the terms of the arrangement are sufficiently detailed to constitute a " 'plan, fund or program,' the inquiry turns to whether the employer's involvement was substantial enough to have 'established or maintained' the plan." *Grimo,* 34 F.3d at 151 (citation omitted). The employer's purchase of a group policy " 'offers substantial evidence that a plan, fund, or program has been established.' " *Id.* at 152 (citation omitted). Here, it is undisputed that Wyckoff was the policyholder and entered into a contract with the insurer under which it was obligated to comply with the Policy terms and to submit premiums thereunder; it is also undisputed that the Policy's benefit structure reflects the options designated in Wyckoff's application for the Policy. Furthermore, the Policy document itself makes reference to ERISA, as well as to being subject to terms of the employer's plan, and the cor-

respondence relating to Plaintiff's claim also referred both to ERISA and to a governing plan. Under the circumstances, it is clear that Plaintiff's claim implicates an employee benefit plan as defined in ERISA. The Policy coverage appears to fall squarely within ERISA's definition of "employee welfare benefit plan."

Plaintiff argues, however, that a Department of Labor ("DOL") regulation establishing a limited exclusion from "employee benefit plan" status applies to exempt the Policy from ERISA coverage. The cited exclusion reads as follows:

> (j) Certain group or group-type insurance programs. For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. §§ 2510.3–1(j) (2001). The exemption covers only those plans that meet all four of its criteria. *Grimo*, 34 F.3d at 152. *Accord, e.g., Johnson v. Watts Regulator Co.,* 63 F.3d 1129, 1133 (1st Cir.1995); *Stuart v. UNUM Life Insurance Company of America,* 217 F.3d 1145, 1149 (9th Cir.2000); *Butero v. Royal Maccabees Life Insurance Company,* 174 F.3d 1207, 1213 (11th Cir.1999).

Here there is no dispute that the first, second and fourth criteria (no employer contributions, voluntary participation and no employer remuneration) are met. The question is whether Wyckoff's involvement with the Policy was sufficiently limited to meet the third element of the regulatory standard. The DOL has articulated, in connection with a plan affiliated with a union, the following test of whether a sponsor has "endorsed" a plan within the meaning of the safe harbor:

> An endorsement within the meaning of section 2510.3–1(j)(3) occurs if the employee organization urges or encourages members' participation in the program or engages in activities that would lead a member reasonably to conclude that the program is part of a benefit arrangement established or maintained by the employee organization.

Advisory Opinion No. 94–24A, 1994 WL 317906. *See also* Advisory Opinion No. 94–26A, *Hollander Home Fashions v. CPSC,* 15 F.3d 1097, 1994 WL 36982. Courts have adopted the employee-focused inquiry of the last clause of the DOL's test in the employer plan context, finding persuasive the agency's interpretation of the standard. *See Johnson,* 63 F.3d at 1134–1135; *Connecticut General Life Insurance Company v. Mitchell,* No. 94 Civ. 4648(LAP), 1995 WL 469714, at *4 (S.D.N.Y. Aug.8, 1995). Thus,

> [A]n employer will be said to have endorsed a program within the purview of the ... safe harbor regulation if, in light

of all the surrounding facts and circumstances, an objectively reasonable employee would conclude on the basis of the employer's actions that the employer had not merely facilitated the program's availability but had exercised control over it or made it appear to be part and parcel of the company's own benefit package.

*Johnson,* 63 F.3d at 1135. *See also Thompson v. American Home Assurance Co.,* 95 F.3d 429, 436–37 (6th Cir.1996).

■ Here, the undisputed evidence before the Court shows that the Policy information was provided to employees under a cover page bearing Wyckoff's name and labeled "Your Long Term Disability Benefit." (Provident Life and Casualty Insurance Company Voluntary Group Long Term Disability Insurance Certificate, Ex. 2 to Mem. of Law in Supp. of Def.'s Mot. to Dismiss.) The Policy is identified as a contract between Wyckoff and Provident, changeable by agreement of those parties alone, and subject to a plan that Wyckoff, as plan sponsor, reserved the unilateral right to change. (*Id.* at Certificate Page and 22.) The benefit communications received by Plaintiff refer to coverage under a Wyckoff long term disability plan. (Exs. 4 and 7 to Mem. of Law in Supp. of Def.'s Mot. to Dismiss.) The Policy document describes itself as providing benefits under an employer plan and includes ERISA-specific notices referring to the statute, thus indicating the employer's intent to provide a plan subject to ERISA. The Court finds that these features would lead an objectively reasonable employee to conclude that Wyckoff "had not merely facilitated the program's availability but had exercised control over it or made appear to be part and parcel of the company's own benefit package." *Cf. Johnson,* 63 F.3d at 1135; *Thompson,* 95 F.3d at 437 ("for example, where the employer provides a

summary plan description that specifically refers to ERISA in laying out the employee's rights under the policy or that explicitly states that the plan is governed by ERISA, the employee is entitled to presume that the employer's actions indicate involvement sufficient to bring the plan within the ERISA framework"). *See also Butero,* 174 F.3d at 1213–14 (safe harbor not available where employer picked insurers, decided key terms, deemed certain employees ineligible to participate, incorporated terms into summary plan description, retained power to alter related features); *Brundage–Peterson v. Compcare Health Services Insurance Corp.,* 877 F.2d 509, 511 (7th Cir.1989) ("An employer who creates by contract with an insurance company a group insurance plan and designates which employees are eligible to enroll in it is outside the safe harbor created by the Department of Labor regulation.")

Plaintiff has come forward with no facts from which an inference more favorable to her position on this issue could be drawn. Her attorney asserts in a memorandum of law that Plaintiff "owned" a "private [insurance] contract." (Mem. of Law in Opp'n to Def.'s Mot. to Dismiss This Case at 1.) That assertion is belied by the Policy itself, which identifies Wyckoff as the sole policyholder. Nor is the fact that all premiums under the Policy were paid by employers determinative of the issue of ERISA coverage. There is no ERISA requirement that employees pay all expenses under employee welfare benefit plans. Plaintiff's argument for application of the exemption relies on speculation and wishful thinking rather than relevant law and evidence as required to defeat a summary judgment motion. The Court holds as a matter of law, based on the uncontroverted evidence of record, that the Policy does not come within the safe harbor exemption from ERISA's definition of employee benefit plan. Plaintiff's claim for

benefits thus clearly involves an ERISA governed employee benefit plan.

■ ERISA establishes a cause of action by a claimant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C.A. § 1132(a)(1)(B) (West 1999). ERISA is intended to have a broad preemptive effect. *See Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Fortune v. Medical Assocs. of Woodhull, P.C.,* 803 F.Supp. 636, 640 (E.D.N.Y.1992). ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C.A. § 1144(a) (West 1999). The phrase "relate to" in section 1144(a) is interpreted in its broadest sense, reaching any state laws that have any connection or reference to a particular employee benefit plan. *See Pilot Life Ins. Co.,* 481 U.S. at 47–48, 107 S.Ct. 1549. "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). ERISA clearly preempts state law claims for benefits under an employer-sponsored disability benefit plan, such as the program in which Plaintiff participated. *See James v. Fleet/Norstar Financial Group, Inc.,* 992 F.2d 463, 465 (2d Cir.1993) ("If an employer's program is an employee welfare plan, ERISA preempts state laws that 'provide an alternative course of action to employees to collect benefits protected by ERISA,' " *quoting Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 146 (2d Cir.), *cert. denied* 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989)). The contract cause of action plead in the amended complaint is thus preempted by ERISA and summary

judgment in Defendant's favor on that claim is therefore warranted.

*Plaintiff's Request for Leave to Amend*

Plaintiff contends that, if her non-ERISA claim is preempted, she should be given an opportunity to amend further her complaint to assert an ERISA claim. Plaintiff proffers no specifies as to the nature of that claim, but the Court assumes in light of the factual allegations set forth in the complaint and in her papers in opposition to the instant motion that it would be an action under 29 U.S.C. section 1132(a)(1)(B), for benefits under the plan or to clarify rights to benefits under the plan, since those are the issues raised in the current pleading. *See* 29 U.S.C.A. § 1132(a)(1)(B) (West 1999). While leave to amend is normally freely granted, it is inappropriate in this case because, on the undisputed facts, any ERISA cause of action seeking reversal of the adverse 1998 benefit determination under the Wyckoff plan is barred by Plaintiff's failure to pursue timely the exhaustion of administrative remedies.

■ As required by ERISA, the Policy document included a claims procedure. *Cf.* 29 U.S.C.A. § 1133 (West 1999). An employee benefit plan must provide its participants with a reasonable opportunity to obtain a "full and fair review" after denial of a claim. *Id.* § 1133(2). The doctrine of exhaustion of administrative remedies rests on the principle " 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.' " *See Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, 592 (2nd Cir.1993) (citations omitted). In the ERISA context,

'The primary purposes of the exhaustion requirement are to: (1) uphold Congress' desire that ERISA trustees be

responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*.'

*Id.* at 594, *quoting Denton v. First National Bank of Waco, Texas,* 765 F.2d 1295, 1300 (5th Cir.), *reh'g denied,* 772 F.2d 904 (5th Cir.1985). It is well settled that timely exhaustion of plan remedies is a prerequisite to suit in federal court and that, absent appropriate equitable considerations, court action is barred absent such exhaustion. *See id.; Tiger v. AT & T Technologies Plan for Employees' Pensions, Disability Benefits,* 633 F.Supp. 532, 534 (E.D.N.Y.1986); *Barnett v. International Bus. Machines Corp.,* 885 F.Supp. 581, 586–87 (S.D.N.Y.1995); *Ludwig v. NYNEX Serv. Co.,* 838 F.Supp. 769, 781 (S.D.N.Y.1993). A plaintiff who fails timely to pursue administrative remedies that were available cannot later pursue judicial review of the claim for benefits. *See Barnett,* 885 F.Supp. at 588 n. 7.

The Policy document includes provisions requiring requests for administrative review of adverse benefit determinations to be filed within sixty days after receipt of the determination at issue.[4] (Provident Life and Casualty Insurance Company Voluntary Group Long Term Disability Insurance Certificate at 20–21, Ex. 2 to Mem. of Law in Supp. of Def.'s Mot. to Dismiss.) It also provides that no suit may be filed fewer than sixty days after giving proof of loss and having exhausted all appeals. (*Id.* at 20.) Here, Plaintiff

was informed of the decision to terminate her benefits, of her right to seek further review, and of the applicable time limit for seeking such review, in June 1998. Plaintiff made no effort to seek further review until her early 2000 request that her file be reopened.

■ Although courts have recognized limited equitable considerations that may warrant waiver of the full exhaustion requirement,[5] Plaintiff's assertion that she was suffering effects of her disability and did not retain a lawyer until after the 60–day period had expired does not establish grounds for disregarding the exhaustion requirement in her case. Exhaustion requirements and time limits apply to all types of employee benefit plans, including disability plans. *See, e.g., Jones v. UNUM Life Insurance Co. of America,* 223 F.3d 130, 140 (2d Cir.2000); *Tiger,* 633 F.Supp. at 534. It is in the nature of a disability plan that anyone who is likely to contest a denial of benefits will be a person who is, or perceives herself to be, suffering from an ailment or impairment. ERISA's administrative claim and exhaustion requirements do not recognize a disability exception. *See generally,* 29 C.F.R. § 2560.503–1 (2001). Nor is the absence of legal representation at the claims stage a ground for waiver of the exhaustion requirement. ERISA's statutory provisions and the related regulations requiring plain-language notices of the administrative appeals process contemplate the ability of participants and beneficiaries to pursue appeals processes without formal legal representation. *See id.* Thus, neither Plaintiff's allegations concerning her medical condition nor those concerning her status with regard to

4. Plans that provide at least 60 days for appeal of an adverse benefit determination meet the requirements of the Department of Labor's regulations governing appeal procedures under ERISA plans. *See* 29 C.F.R.

§ 2560.503–1(h)(2)(i) (2001) and predecessor regulations.

5. *See Ludwig,* 838 F.Supp. at 781–82, and cases cited therein.

legal representation raise material issues of fact with respect to the requirement of exhaustion of administrative remedies.

Plaintiff further asserts that the "futility" exception to exhaustion applies here. The futility exception looks to the likelihood that "available administrative remedies" would produce a result different from the one being challenged. Futility would excuse an ERISA Plaintiff's failure to exhaust only where the claimant clearly demonstrates "that pursuing available administrative remedies would be futile." *Kennedy,* 989 F.2d at 594. Here, by reason of Plaintiff's own failure to challenge timely the contested decision, no administrative remedies are available. That is not futility within the meaning of the doctrine and, accordingly, does not constitute grounds for relief from the exhaustion requirement.[6]

In light of the undisputed failure to exhaust administrative remedies on a timely basis, any claim under ERISA with regard to the June 1998 benefit denial would be barred and amendment of the complaint would thus be futile. Accordingly, Defendant's motion for summary judgment is granted and Plaintiff will not be given leave to amend further her complaint.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

IT IS SO ORDERED.

---

6. To the extent that courts have found futility outside of the normal appeal timetables, the circumstances have been quite different from those here. *See Ludwig,* 838 F.Supp. at 781–82 (reviewing relevant case law, including cases recognizing futility where plan fails to respond to claimant's request for review, where plan no longer exists, and where there is a material fact as to whether plaintiff was informed of appeals process).