Isaac **SHAMOUN**, Plaintiff,

v.

**BOARD OF TRUSTEES, Liquor Salesmen's Union Local 2 Pension Fund, Vincent Fyfe, Vincent D'Acunto, Martin Mann, Vincent Volpe, Abraham M. Buchman, Anthony Marsloe and Stephen Meresman, Defendants.**

No. 04–CV–3368(ILG).

United States District Court,
E.D. New York.

Feb. 22, 2005.

James J. Mahon, Casey Mahon & Rooney, LLP, New York City, for Plaintiff.

J. Warren Mangan, O'Connor & Mangan, P.C., New Rochelle, NY, for Defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

This action arises out of plaintiff Isaac Shamoun's ("Shamoun" or "plaintiff") alleged entitlement to retirement benefits

under a defined benefit pension plan administered by defendant Board of Trustees, Liquor Salesmen's Union Local 2 Pension Fund (the "Fund" or "defendant").

## FACTS

According to the complaint, plaintiff was a member of Liquor Salesmen's Union Local 2 ("Local 2") "with forty years of service" and was employed by Peerless Importers, Inc. ("Peerless"). Compl. ¶ 1. Defendant [1] administers the defined benefit pension plan (the "Plan"), established under and governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), for members of Local 2. *Id.* ¶ 2. The Fund is an employee benefit plan and a multiemployer plan as defined under ERISA. *See* Affidavit of Vincent Fyfe ("Fyfe Aff.") ¶ 2. Plaintiff is a covered employee under the Plan. *Id.* ¶ 6. Plaintiff alleges that when he began contributing to the Plan in 1964, "the Plan permitted participants to receive retirement benefits upon reaching the age of sixty five, even while remaining employed." Compl. ¶ 7. On or about July 1, 2002, plaintiff reached retirement age. *Id.* ¶ 1. Consequently, plaintiff alleges, he was entitled to monthly retirement benefits totaling $2,150.00, a benefit that vested on July 7, 2004. *Id.* ¶ 8; Ex. B (attaching Plan calculations of Shamoun's retirement benefits). Plaintiff claims that the Plan was amended in 1989 to preclude employees from continuing to work at Peerless if they elected to receive retirement benefits. *Id.* ¶ 9. Plaintiff further alleges that the Plan was being administered unfairly because, despite the 1989 amendment, some Peerless salesmen continued to work while receiving retirement benefits. *Id.* ¶ 10.

In January 2004, plaintiff spoke with the President of Local 2, Vincent Fyfe ("Fyfe"), about his retirement benefits. According to plaintiff, Fyfe told him that he was not entitled to retirement benefits if he continued working as a Peerless salesman. Affidavit of Isaac Shamoun ("Shamoun Aff.") ¶ 2. Thereafter, plaintiff hired counsel, James J. Mahon ("Mahon"). *Id.* Between February 18 and October 28, 2004, Mahon exchanged letters with counsel to the Fund, J. Warren Mangan ("Mangan"), regarding plaintiff's belief that he was being discriminated against because the Fund permitted other plan participants to receive retirement benefits while continuing to work for Peerless. Those letters are described in more detail below.

Representatives for the parties exchanged letters after plaintiff initiated this action against the Fund and individual Trustees on August 6, 2004. In those letters, defendant raised plaintiff's failure to file an application for benefits and plaintiff responded that filing an application form would be "futile." *See* Affirmation of James J. Mahon ("Mahon Aff.") Ex. L (letter dated October 13, 2004); Ex. O (letter dated October 26, 2004). The letters also concerned the Trustees meeting, originally scheduled for June 23, 2004, which defendant invited plaintiff to attend. *See id.* Ex. I, J, M, N. That meeting was cancelled and rescheduled for and held on October 26, 2004. *See id.* Ex. N. Plaintiff, along with his attorney, attended that meeting, but, having had no opportunity to speak with the Trustees, claims that he was "ignored" and left the meeting. *Id.* Ex. O. To the contrary, Mangan declares that the Trustees were ready to hear Shamoun and counsel around 12:30 that day, but that they had already left the building. Reply Affirmation of J. Warren Mangan ("Mangan Reply Aff.") ¶ 13. On

---

1. In addition to the Fund, plaintiff sued Trustees of the Fund in their individual capacities. Those defendants do not move to dismiss the complaint.

October 28, 2004, Mangan wrote a letter to plaintiff's counsel stating the same. *See* Fyfe Aff. Ex. C; *see also id.* ¶ 12.

Count I of plaintiff's complaint alleges that the Fund violated the anti-cutback provision of ERISA, 29 U.S.C. § 1054(g), which prohibits a fund from decreasing certain benefits by plan amendment, and Count II alleges that the Trustees violated fiduciary duties which they owed to plaintiff. *See* Compl. ¶¶ 14, 19. Plaintiff seeks money damages and, with respect to Count I, an order directing the Fund to pay him retirement benefits while he works as a Peerless salesman.[2] Pending before the Court is defendant's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6).

### DISCUSSION

■ Defendant moves to dismiss the complaint on the ground that plaintiff failed to file an application for benefits with the Fund in compliance with the internal benefits procedure set forth in the Summary Plan Description ("SPD") and that this failure to exhaust available administrative remedies mandates dismissal of plaintiff's complaint under ERISA. Def. Mem. at 2. In opposition, plaintiff argues that he should be excused from the exhaustion requirement because, based on communication with the President of Local 2 and counsel for the Fund, it would have been futile for him to file an application form for benefits under the Plan. Pl. Opp. at 2.

### I. Conversion to Summary Judgment

■ Defendant styles its motion as one to dismiss plaintiff's complaint for failure to exhaust administrative remedies pursuant to the Plan. Yet in addition to both

parties' memoranda of law, they have submitted affidavits, affirmations and exhibits for the Court's consideration. Rule 12(b) of the Federal Rules of Civil Procedure provides that, if on a motion to dismiss pursuant to Rule 12(b)(6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *See also Kopec v. Coughlin,* 922 F.2d 152, 154 (2d Cir.1991) (pursuant to Rule 12(b) a district court must either exclude additional materials or convert motion to summary judgment giving parties the opportunity to submit evidence). The Second Circuit stated, "The essential inquiry is whether the [plaintiff] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *In re G. & A. Books, Inc.,* 770 F.2d 288, 295 (2d Cir. 1985). Furthermore, "[a] party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss." *Id.; see also New Sensor Corp. v. CE Distrib. LLC,* 303 F.Supp.2d 304, 309 (E.D.N.Y.2004) (Glasser, J.). The Court in *G. & A.* held that appellant, one of the plaintiffs below, had adequate notice that the district court was considering materials outside the pleadings given that plaintiffs attached 14 exhibits to their complaint and submitted affidavits and other documents in opposition to defendants' motion

---

**2.** Plaintiff predicates this Court's subject matter jurisdiction on "29 U.S.C. § 1331." Compl. ¶ 4. Title 29 does not contain any section bearing that number. Since plaintiff's claims arise under ERISA, it is clear that he intended to allege federal question subject matter jurisdiction based on 28 U.S.C. § 1331.

to dismiss. 770 F.2d at 295. Similarly, the Court in *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 592 (2d Cir.1993), found that plaintiffs had sufficient notice that failure to exhaust administrative remedies under ERISA was the basis for defendant's motion to dismiss plaintiffs' complaint. Moreover, the Court ruled that plaintiffs had an adequate opportunity to present evidence where, in opposition to defendant's motion, plaintiffs presented letters between representatives of the parties to demonstrate compliance with exhaustion requirements. Accordingly, the Court affirmed the district court's conversion of the motion into one for summary judgment pursuant to Rule 12(b). *Id.* District courts in this circuit routinely convert motions to dismiss for failure to exhaust administrative remedies in ERISA cases to motions for summary judgment where the parties submit affidavits and other documentation along with their motion papers. *See, e.g., Sanfilippo v. Provident Life & Cas. Ins. Co.*, 178 F.Supp.2d 450, 451 (S.D.N.Y.2002); *Sibley–Schreiber v. Oxford Health Plans (N.Y.), Inc.*, 62 F.Supp.2d 979, 984 (E.D.N.Y.1999); *Schein v. News Am. Publ'g, Inc.*, 1989 WL 56255, at *1 (E.D.N.Y. May 23, 1989). In light of the case law described above and the parties' submissions in this case, the Court will treat defendant's motion to dismiss as a motion for summary judgment.

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is precluded only where the factual issue is genuine, which means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In order to survive a motion for summary judgment, "the opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To that end, the nonmoving party "may not rest upon the mere allegations or denials" in its pleadings; rather, it "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). When evaluating a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. Guided by these principles, the Court turns to the parties' arguments in this case.

## II. Exhaustion Requirement

A claimant's exhaustion of administrative remedies provided under a benefit plan is a prerequisite to filing an action which arises under ERISA. Although Congress has not prescribed an exhaustion requirement under ERISA, courts "have nevertheless insisted upon a showing that all plan remedies have been pursued, or that the facts justify a waiver thereof, as a jurisdictional essential for maintaining a claim for benefits in federal court." *Ludwig v. NYNEX Serv. Co.*, 838 F.Supp. 769, 781 (S.D.N.Y.1993). *See also Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir.1989) (recognizing exhaustion requirement in ERISA cases); *Alfarone v. Bernie Wolff Constr. Corp.*, 788 F.2d 76, 79 (2d Cir.1986) (same); *Midpoint Serv. Provider, Inc. v. Conn. Gen. Life Ins. Co.*, 152 F.Supp.2d 306, 310 n. 4 (S.D.N.Y.2001).[3]

**3.** Courts uniformly require exhaustion for

claims based on violations of contractual

Courts developed this requirement in construing section 1133 of ERISA, which requires all benefit plans to provide internal review procedures for claims disputes.[4] *See Ludwig*, 838 F.Supp. at 781.

The Second Circuit "has recognized the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Kennedy*, 989 F.2d at 594 (internal quotations and citation omitted); *Jones v. UNUM Life Ins. Co.*, 223 F.3d 130, 140 (2d Cir.2000). The primary purposes of the exhaustion doctrine are to: (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo.

*Barnett v. Int'l Bus. Machines Corp.*, 885 F.Supp. 581, 587 (S.D.N.Y.1995) (quoting *Kennedy*, 989 F.2d at 594). Additionally, the exhaustion requirement "encourag[es] the private resolution of ERISA disputes so as to minimize the number of frivolous ERISA lawsuits ... and [to] decrease the cost and time of claims settlement." *Ludwig*, 838 F.Supp. at 781 (citations and internal quotations omitted).

"[E]xhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy." *Kennedy*, 989 F.2d at 594. Accordingly, the Court looks to the Plan under which plaintiff claims he is entitled to benefits. The SPD sets forth internal procedures for claims for benefits:

**XVI. Application for Benefits**

To apply for benefits ... *contact the Fund Office at least three months before you want your pension to begin.* This will give the Trustees sufficient time to advise you as to the options available to you and allow you, after you have been advised, to select the form of pension you wish to receive.

* * * * *

**How do I apply for my pension?** *The Pension Fund has an application form which you must complete. You may obtain this form from the Fund Office.* If your application for benefits is denied, in whole or in part, you will be given a written notice stating the reason for the denial and informing you of any additional information needed for further

rights protected by ERISA, such as denial of benefits. *See, e.g., Barnett v. Int'l Bus. Machines Corp.*, 885 F.Supp. 581, 586 (S.D.N.Y. 1995) (administrative remedies must be exhausted before an action to recover benefits may be brought under 29 U.S.C. § 1132). There is a split among courts, however, with regard to whether exhaustion is required for claims under § 1132(a)(3) for alleged violations of statutory rights created by ERISA, *e.g.*, an employee's right not to be terminated for seeking benefits or breach of fiduciary duty. *See De Pace v. Matsushita Elec. Corp.*, 257 F.Supp.2d 543, 558 (S.D.N.Y.2003) (the Fourth, Fifth, Sixth, Tenth, Third and Ninth circuits distinguish between statutory and plan-based ERISA claims, while the Seventh and Eleventh circuits do not). The Second Circuit has yet to address the issue, but courts in this circuit hold that there is no exhaustion requirement for statutory claims under ERISA. *See id.* Defendant argues that "Shamoun seeks to avoid ERISA's clear exhaustion requirement by alleging a breach of fiduciary duty." *See* Def. Mem. at 3. Plaintiff, however, does not contest that his claims are subject to the exhaustion requirement. *See* Pl. Opp. at 3. In any event, the Court will apply the exhaustion requirement given that, at least with regard to plaintiff's first cause of action, plaintiff is seeking benefits allegedly due him under the Plan.

4. That section provides: "every employee benefit plan shall—(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133.

consideration of your claim. If you disagree with the denial, you will have 60 days in which to request, in writing, a review of your claim. At that time, the review procedure will be explained to you in detail.

See Fyfe Aff. Ex. B at 17–18 (emphasis added).[5] The address of the Fund Office is clearly set forth in the SPD under "Name and Address of Plan Trustee." See id. at 29.

It is undisputed that plaintiff never filed an application for benefits in accordance with the policy above. In the complaint, plaintiff alleges only that "Since reaching the age of 65, Plaintiff has repeatedly demanded that he be permitted to continue his employment at Peerless and also receive the retirement income he is entitled to under the Plan" and defendant "refus[ed] to address Plaintiff's request for accrued benefits to which he is entitled under the Plan." See Compl. ¶¶ 13, 18, 19. Moreover, as counsel for defendant notes, while plaintiff's complaint indicates that he is claiming entitlement to monthly retirement benefits of $2,150.00 effective July 2004 while he continues working for Peerless, see Compl. ¶ 8, this claim was never set forth in any of the letters to counsel for the Fund. See Mangan Aff. ¶ 7.

Nor does plaintiff assert in opposition to defendant's motion that he did file an application for benefits pursuant to the Plan. The letters between representatives for the parties exchanged before plaintiff initiated this action on August 6, 2004 do not indicate otherwise. For example, in the first letter from plaintiff's counsel to the Fund, dated February 18, 2004, Mahon states that he has "been requested by Isaac Shamoun to make claim to pension benefits" and asserts that the Fund is discriminating between plaintiff and other retirees covered by the Plan. See Mahon Aff. Ex. A. The letter dated March 22, 2004 from Mangan to Mahon states that plaintiff's complaint of discrimination as set forth in his February 18, 2004 letter will be submitted to the Board of Trustees at the next meeting of that body. See Mahon Aff. Ex. B. Moreover, the letter dated April 21, 2004 from Mahon to Mangan makes no mention of an application for benefits. See id. Ex. C. Under the Plan, none of these is an "application form" for benefits.[6]

### III. Futility Exception

▪ A plaintiff may be excused from the exhaustion requirement where he or she demonstrates that it would have been futile to have followed administrative procedures. In order to satisfy this exception, a claimant must make a "clear and positive showing" of futility. Kennedy, 989 F.2d at 594; see also Ludwig, 838 F.Supp. at 781–82 (finding that futility exception applied where plaintiff made four inquiries—two in writing—to employer about reinstatement of pension benefits, employer failed to inform him of his appeal rights and failed to respond to plaintiff's counsel's letter requesting review of benefits determination).[7] If futility is established, then the purposes behind the exhaustion requirements would no longer be

---

5. In his affirmation, Mangan cites the relevant language from the Plan, which, although more expansive than the SPD, is identical in terms of the procedure for filing a benefits application. See Affirmation of J. Warren Mangan ("Mangan Aff.") ¶ 5.

6. Curiously, Mahon states in the letter dated February 18, 2004, "If my client does not receive a favorable response in ten days, I have been authorized to pursue administrative and legal proceedings on his behalf." On

the one hand, that statement acknowledges that Mahon has yet to pursue administrative remedies and, on the other hand, it also threatens legal action that would be clearly premature given that plaintiff had not filed an application for benefits.

7. The Ludwig court surveyed relevant case law and found that courts applied the futility doctrine in the following circumstances: (1) "where, for summary judgment purposes, there is a material issue of fact as to whether

served and the requirement is waived. *See Barnett*, 885 F.Supp. at 587.

 Plaintiff argues that the futility doctrine excuses him from the exhaustion requirement under the Plan because: (1) the President of Local 2 told him he was not entitled to retirement benefits if he continued working for Peerless; (2) despite repeated communications between plaintiff's counsel and counsel to the Fund about plaintiff's purported entitlement to retirement benefits, defendant refused to give plaintiff an application form; and (3) the Fund raised the issue of plaintiff's failure to file an application for benefits only after plaintiff served the Fund with the complaint in this action. *See* Pl. Opp. at 4. The Court addresses these arguments in turn.

Plaintiff contends that in January of 2004 he approached Fyfe and "told him that I wished to apply for retirement benefits." *See* Shamoun Aff. ¶ 2. According to plaintiff, Fyfe told him that he "was not eligible to obtain benefits and continue working." *Id.* Fyfe acknowledges that he expressed his belief that plaintiff could not both continue to work and receive retirement benefits under the Plan. Fyfe Aff. ¶ 11. Even viewing the evidence in the light most favorable to plaintiff for purposes of this motion, any representations made by Fyfe do not support plaintiff's assertion of futility. Courts hold that representations by one member of a benefits committee that plaintiff's claim is meritless do not relieve a claimant from following the prescribed administrative procedure of the benefit plan. Plaintiff in *Barnett*, 885 F.Supp. at 586, was injured on the job and

sought compensation for her injuries through disability benefits. She never filed an application for benefits pursuant to her employee benefit plan and, thus, her employer IBM never denied any benefits claim. Nevertheless, she argued that any claim for benefits was denied *de facto* because several members of management allegedly encouraged plaintiff not to apply for disability benefits until an ongoing worker's compensation process concluded and told her that based on a review of plaintiff's eligibility for benefits that her employer had conducted, any application would be denied. *Id.* at 586–87. Further, plaintiff alleged that in light of representations by executives at IBM, it would have been futile to apply for disability benefits. *Id.* at 586. The court rejected this argument and held that allegations that plaintiff was told any application for disability benefits would be denied were insufficient to establish futility absent any allegations that she was denied information about the proper procedures for filing a benefits claim. *Id.* at 587–88. Further, the court held that a *de facto* denial of benefits does not support a finding of futility, which is usually "applied in a context in which there has been, in some form, an unambiguous application for benefits and a formal or informal administrative decision denying benefits and it is clear that seeking further administrative review of the decision would be futile." *Id.* at 588.

In this case, Fyfe's assertion that plaintiff was not entitled to retirement benefits while he continued working clearly did not constitute a formal denial of a benefits application.[8] Furthermore, that statement

the claimant has 'properly appealed' a denial of benefits through the specified administrative channels"; (2) "where the plan has failed to respond to the claimant's, or the claimant's representative's, written request for a review of the plan's benefit eligibility determination"; and (3) "where there is a material issue of

fact as to whether the plaintiff was informed of the appeals process." 838 F.Supp. at 781–82 (citations omitted).

8. Although plaintiff alleges that defendant "den[ied] Plaintiff's application(s) for [ ] benefits," *see* Compl. ¶ 19, the evidence estab-

does not establish futility because "[t]he threshold required by the futility exception is very high and informal representations of the views of a committee are not a sufficient basis for claiming futility." *Schein*, 1989 WL 56255, at *3–4 (representations of two of four members of the committee on retirement benefits as to calculations of plaintiff's benefits did not render compliance with the administrative review process futile). At the most, Fyfe's representation constitutes a *de facto* denial of benefits, which, according to *Barnett*, does not support the application of the futility doctrine. Indeed, to find allegations of oral representations by management as to a "claim" for benefits that was never filed sufficient to establish futility would render the exhaustion requirement meaningless.

◼ Plaintiff's second argument is that despite the letters exchanged between plaintiff's counsel and counsel to the Fund about plaintiff's purported entitlement to retirement benefits, defendant refused to give plaintiff an application for benefits. Pl. Opp. at 4. Between February 18 and October 28, 2004, plaintiff's counsel, Mahon, corresponded with Mangan, counsel to the Fund.[9] In those letters, plaintiff's counsel referred to Shamoun's belief that he was being discriminated against because the Fund permitted other plan participants to receive retirement benefits while continuing to work for Peerless. *See* Mahon Aff. Ex. A (letter dated February

18, 2004); Ex. H (letter dated June 21, 2004, referring to "whether the Plan rules have been applied fairly to all participants"). On March 22, 2004, counsel to the Fund responded that the matter was being submitted to the Board of Trustees and later requested certain information from plaintiff in preparation for the Trustees meeting scheduled for June 23, 2004, which was later rescheduled for and did occur on October 26, 2004. *See id.* Ex. B, D. In response, Mahon requested, *inter alia*, a copy of the Annual Report of the Retirement Plan of the Pension Fund. *See id.* Ex. E. In letters dated May 27 and June 21, 2004, representatives for the parties disputed whether plaintiff was entitled to the information he requested. *See id.* Ex. G, H.

In analyzing this correspondence with respect to the question of futility, the Court finds instructive *Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 133 (2d Cir.2001). In that case, Davenport, an independent contractor for defendant Abrams, became dissatisfied that her status as an independent contractor rendered her ineligible for employment benefits. *Id.* at 132. She directed her lawyer to write a letter to Abrams stating that the employer's refusal to cover Davenport violated ERISA. *Id.* She never filed an application for benefits or pursued any other administrative remedy. Thereafter, between February 1997 and August 1998, her lawyer wrote to Abrams asserting

---

lishes that defendant never formally denied any application for benefits by plaintiff. Fyfe testified that "there was no administrative determination made on any form of benefit eligibility as to [plaintiff], and no action has been taken by the Trustees regarding his entitlement 'to obtain benefits and continue working.'" Fyfe Aff. ¶ 10. Indeed, the Plan states that in the event that a claim for benefits is denied, written notice will be given to a claimant stating the reasons for the denial. *Id.* Ex. B at 17. It is undisputed that plaintiff

received no such written notification of a denial of a claim for benefits.

9. The only letter submitted that is addressed directly to the Fund is the one dated February 18, 2004. *See* Mahon Aff. Ex. A. Thereafter, all written communication was between counsel for the parties, except for two letters dated July 26 and October 12, 2004 from Mangan to Shamoun regarding the date of the Trustees meeting. *Id.* Ex. J, N.

Davenport's right to benefits. Abrams responded on February 28, 1997 that it viewed Davenport as ineligible for employee benefits since she was an independent contractor. *Id.* She then sued to recover benefits allegedly owed to her under the benefit plan. *Id.* at 131. The district court granted summary judgment to Abrams on the basis of Davenport's failure to exhaust the prescribed administrative remedies. *Id.* On appeal, Davenport argued that exhausting internal plan procedures would have been futile. The Court of Appeals affirmed, holding that Davenport failed to make a "clear and positive showing" of futility because "the 1997–98 correspondence did not amount to an 'unambiguous application for benefits and a formal or informal administrative decision denying benefits [such that] it is clear that seeking further administrative review of the decision would be futile.'" *Id.* at 133 (quoting *Barnett,* 885 F.Supp. at 588); *see also Schein,* 1989 WL 56255, at *4 (communications between counsel which did not resolve the dispute did not render exhaustion futile); *Scheider v. U.S. Steel Corp.,* 486 F.Supp. 211, 212 (W.D.Pa.1980) (letters between plaintiff's counsel and manager of pension asserting, *inter alia,* plaintiff's entitlement to benefits and stating that without a final determination plaintiff would initiate a lawsuit did not establish futility).

Here, plaintiff asserts futility based on letters between his counsel and the Fund concerning the alleged unfair administration of the Plan. *Davenport* compels the conclusion that these letters do not establish either an "unambiguous application for benefits" or a "formal or informal administrative decision denying benefits" and thus do not support a finding of futility.[10] 249 F.3d at 133. *See also Thomas v. Verizon,* 2004 WL 1948753, at *5 (S.D.N.Y. Sept. 2, 2004) (granting summary judgment for defendant where plaintiff failed to submit to medical examination necessary for benefits application and failed to appeal denial of benefits, and plaintiff's noncompliance with requirements did not clearly demonstrate futility).

Plaintiff also relies on the letters between counsel in arguing that defendant's failure to provide him with an application for benefits itself demonstrates futility. In his affirmation, Mahon states repeatedly that "Conspicuously missing from this communication [between counsel] was an application form." *See, e.g.,* Mahon Aff. ¶¶ 3, 4, 5.[11] Plaintiff also testifies to defendant's and Fyfe's failure to provide him with an application form. Shamoun Aff. ¶¶ 2, 3. According to Fyfe, plaintiff never asked him for an application form. Fyfe Aff. ¶ 10. Indeed, in correspondence with the Fund, plaintiff, through his counsel, never requested an application form in ac-

10. One letter from Mangan to Mahon dated April 29, 2004 refers to "Mr. Shamoun's claim to receive a pension benefit." Mahon Aff. Ex. D. In view of *Davenport,* 249 F.3d at 133, this single letter between counsel for the parties discussing plaintiff's asserted right to benefits and discrimination by the Fund does not raise a genuine issue of material fact as to futility.

11. Plaintiff's repeated assertion that defendant failed to include an application form does not excuse plaintiff from the exhaustion requirement based on any denial of meaning-

ful access to the claims procedure because he was uninformed of the proper procedure. "Such allegations are usually made when a claimant requests benefits and is notified that his claim is rejected, but is not and has not been told that he has an avenue for appeal." *Schein,* 1989 WL 56255, at *5 (rejecting such argument where "plaintiff has yet to request any benefits, there was no formal notification of a denial of benefits and thus no occasion where, arguably, defendant should have informed him of administrative review procedures available"); *Scheider,* 486 F.Supp. at 213.

cordance with the procedures prescribed by the Plan. Moreover, there is no suggestion that plaintiff could not have obtained an application form on his own without the assistance of counsel. Thus, the Court rejects this argument.

■ Finally, plaintiff argues that the Fund did not raise his failure to file an application until after he initiated this action. Pl. Opp. at 4. The Court rejects this argument because there is no evidence that plaintiff did not have the SPD, which clearly sets forth the internal procedure of the Plan for filing an application for benefits.[12] Moreover, that procedure places the burden on *claimants* to obtain an application form in order to file a claim with the Fund Office. *See* Fyfe Aff. Ex. B at 17–18.

Plaintiff has not made the requisite "clear and positive showing" of futility which would excuse him from the exhaustion requirement imposed on a claim for benefits under an ERISA pension fund. None of the circumstances outlined in *Ludwig,* 838 F.Supp. at 781–82, under which federal courts invoke the futility doctrine, apply in this case. Accordingly, plaintiff's failure to exhaust administrative remedies compels the entry of summary judgment against him. *See Diagnostic Med. Assoc. v. New York City Dist. Council of Carpenters Welfare Fund,* 2004 WL 439512, at *2 (S.D.N.Y. Mar. 9, 2004) (granting summary judgment in favor of defendant where futility doctrine did not excuse plaintiff's failure to follow internal review procedure); *Sanfilippo,* 178

F.Supp.2d at 458–59. The Court grants summary judgment in favor of defendant without prejudice to plaintiff's ability to re-file his complaint if necessary after he exhausts the remedies set forth in the Plan. *See Diagnostic Med. Assoc.,* 2004 WL 439512, at *1 n. 1; *Preston v. The Am. Fed'n of Television & Radio Artists,* 2002 WL 1009458, at *5 (S.D.N.Y. May 16, 2002); *Benaim v. HSBC Bank USA,* 94 F.Supp.2d 518, 519 (S.D.N.Y.2000).

## CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of defendant without prejudice. The Clerk of Court is directed to close this case.

SO ORDERED.

---

12. Plaintiff could not, and does not, argue that ignorance of the proper procedure supports the application of the futility exception. *Davenport,* 249 F.3d at 134 (rejecting plaintiff's argument that the exhaustion requirement should be waived because, having never received the summary plan description, she was ignorant of the filing requirements, and stating, "Davenport, who was represented by counsel throughout, never attempted to file a

claim for benefits"). Plaintiff was represented by counsel since approximately January 2004. "The fact remains that despite being represented by counsel, Plaintiff has not even initiated—viz., filed a formal claim—the administrative claims procedures—let alone appealed the purported denial or otherwise exhausted administrative remedies." *Reid v. The Local 966 Pension Fund,* 2004 WL 2072086, at *3 (S.D.N.Y. Sept. 15, 2004).